UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re:<br><br>Renato Casali,<br><br>       Debtor | |
| | Bankruptcy No. 13-bk-30521 |
| Parkway Bank & Trust,<br><br>       Plaintiff<br><br>v.<br><br>Renato Casali<br><br>       Defendant | Chapter 7<br><br>Adversary No. 14-ap-124 |

**MEMORANDUM OPINION ON MOTION OF RENATO CASALI TO DISMSS PARKWAY BANK & TRUST'S ADVERSARY COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBT**

  This Adversary Proceeding relates to the bankruptcy petition filed by debtor-defendant Renato Casali ("Casali") under Chapter 7 of the Bankruptcy Code. Creditor-plaintiff Parkway Bank & Trust ("Parkway") filed its complaint (Dkt. 1) on February 25, 2014 seeking a judgment that the debt due Parkway from Casali be held nondischargeable under 11 U.S.C. § 523(a)(2)(A).

  The matter concerns a loan Parkway extended to Casali. In 2003, Casali obtained a personal line of credit from Parkway agreeing, among other conditions, to give Parkway a first mortgage on his personal residence located at 4547 Potawatomie, Chicago, Illinois ("the Property"). At the time, Household Finance Company ("Household") held the first mortgage on the Property. Allegedly, Casali promised to use the money advanced by Parkway to pay Household in full to obtain a release of Household's first mortgage, thus giving Parkway the first mortgage. However, after Parkway advanced its loan, Casali continued to draw on his line of credit with Household leaving a balance still due, and the original first mortgage was not released by Household. Parkway alleges that Casali's conduct amounted to false pretenses and false representations, and the entire debt is therefore nondischargeable under § 523(a)(2)(A).

  Casali moved to dismiss Parkway's complaint under Rule 12(b)(6) F.R.C.P. [Rule 7012 Fed. R. Bankr. P.] for failure to state a cause of action, for failure to allege fraud with particularity as required by Rule 9(b) F.R.C.P. [Rule 7009 Fed. R. Bankr. P.], and because judicial estoppel assertedly precludes Parkway from asserting its position in the Complaint.

Because Parkway has thus far failed to allege that Casali made false representations or had actual intent to defraud and deceive, the motion to dismiss will be allowed, but with leave to amend.

## FACTS AS ALLEGED IN COMPLAINT

On a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are taken as true and all reasonable inferences are drawn in favor of the non-moving party. *Geinosky v. City of Chicago*, 675 F.3d 743, 746 (7th Cir. 2012). Documents attached to a complaint are considered part of the complaint. F.R.C.P. 10(c) [Rule 7010 Fed. R. Bankr. P.]; *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (citations omitted). Parkway's complaint and exhibits allege the following facts:

In 2003, Casali obtained a line of credit from Parkway. (Complaint ¶ 8). Casali informed Parkway about an existing line of credit having a debt with Household then amounting to $80,000 secured by first mortgage on the Property. (¶ 6). Parkway informed Casali that any loan extended to him would be conditioned on: (1) closing Casali's line of credit with Household, (2) using the proceeds of Parkway's loan to pay off the line of credit with Household, (3) release of Household's first mortgage on the Property, (4) and Parkway securing a first mortgage on the Property. (¶ 7).

Based on Casali's agreement to those conditions, Parkway and Casali entered into a Credit Agreement and Disclosure on May 5 stating in part, "[y]ou acknowledge this Agreement is secured by 1ˢᵗ Mortgage on [the Property]." (¶ 7); (Exh. A). The mortgage signed by Casali and his wife on that same day and recorded shortly after states "[g]rantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage . . . ." (*Id.* ¶9); (Exh. B). Casali also executed a Disbursement Request and Authorization form, acknowledging and agreeing that *the purpose* of receiving the loan was to pay off the "1ˢᵗ mortgage with Household . . . of $80,000.00 . . . ." (¶ 10); (Exh. C).

On or about May 7, 2003, Household provided a payoff letter to Casali indicating $154,731.46 as the payoff amount due at that time, subject to a final audit, and with no waiver of Household's rights to receive payment of any debt resulting from any recent advances and returned items. (¶¶ 10-13); (Exh. D).

On May 8, 2003, Casali and his wife signed the payoff letter authorizing cancellation of their account at Household. (¶ 15); (Exh. D). Parkway sent a check for $154,731.46, pursuant to

the payoff letter, and a request for release of Household's first mortgage. (¶ 16). Two days later, Household cashed that check. (¶ 17).

Without disclosing to Parkway, Casali continued to make new draws from his line of credit with Household even after signing the payoff letter. (¶¶ 18-19). As a result, Casali continued to owe Household for the new draws, and Household did not release its mortgage, leaving Parkway without a first mortgage on the Property. (¶¶ 20, 28).

On January 29, 2013, Casali defaulted on the new loan by failing to pay real estate taxes on the Property. (¶ 23). On February 11, 2013, Parkway discovered that Household had never released its mortgage. (¶¶ 24-25).

Parkway alleges that Casali made false representations and omissions of fact because he never intended to close his line of credit with Household but only represented that he would do so for the purpose of inducing Parkway to extend a loan to him. (¶ 29). Parkway asserts that it would not have extended credit to Casali had it known Casali's line of credit with Household would remain open and not be completely paid off, leaving it without a first mortgage on the Property. (¶ 31).

Parkway's complaint seeks a declaration that the entire debt Casali owes Parkway is nondischargeable under 11 U.S.C. § 523(a)(2)(A) because it is a debt "for money, property, services, or an extension, renewal, or refinancing of credit" obtained by "false pretenses, false representation, or actual fraud . . . ." (¶¶ 26, 32). Casali moved to dismiss Parkway's complaint under Rule 12(b)(6) [F.R.C.P. Rule 7012 Fed. R. Bankr. P.] for failure to state a claim upon which relief may be granted.

## DISCUSSION

### JURISDICTION

Jurisdiction lies to entertain this matter under 28 U.S.C. § 1334. This matter is an objection to dischargeability, and is therefore a core proceeding under 28 U.S.C. § 157(b)(2)(I). It is referred here by Internal Procedure 15(a) of the District Court for the Northern District of Illinois. An adversary proceeding seeking to determine dischargeability of a debt "stems from the bankruptcy itself." *Stern v. Marshall*, 131 S. Ct. 2594, 2618 (2011). This case only concerns the dischargeability of a debt. As such, a bankruptcy judge has constitutional authority to enter final judgment in this matter. Venue is proper under 28 U.S.C. § 1409(a).

SUFFICIENCY OF THE PLEADINGS

A motion to dismiss under Rule 12(b)(6) [F.R.C.P., Rule 7012 F.R. Bankr. P.] tests the sufficiency of the complaint rather than the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). "The consideration of a 12(b)(6) motion is restricted solely to the pleading, which consist generally of the complaint, any exhibits attached thereto, and supporting briefs." *Thompson v. Illinois Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002); Rule 10(c) [F.R.C.P.; Rule 7010 F.R. Bankr. P.]. All well-pleaded allegations of the complaint are assumed true and read in the light most favorable to the plaintiff. *United Indep. Flight Officers, Inc. v. United Air Lines, Inc.*, 756 F.2d 1262, 1264 (7th Cir. 1985). If the complaint contains allegations from which a trier of fact may reasonably infer evidence as to necessary elements of proof available for trial, dismissal is improper. *Sidney S. Arst Co. v. Pipe fitters Welfare Educ. Fund*, 25 F.3d 417, 421 (7th Cir. 1994).

Under Rule 12(b)(6), a complaint will be dismissed unless it clears two "easy-to-clear hurdles." *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007).

First, the complaint must contain enough factual detail to give the defendant fair notice of the claim under Rule 8(a) F.R.C.P. [Rule 7008 Fed. R. Bankr. P.] "[A] formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Some pleaded facts must support the claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *McCauley v. City of Chicago*, 671 F.3d 611, 616–17 (7th Cir. 2011); *Swanson v. Citibank, N.A.*, 614 F.3d 400, 405 (7th Cir. 2010). But Rule 8(a) only requires a complaint to contain "a short and plain statement of the claim showing that the plaintiff is entitled to relief[.]" [F.R.C.P., Rule 7008 F.R. Bankr. P.]

Second, a complaint as thus pleaded must state a "plausible" claim, meaning the allegations must raise the plaintiff's right to relief above a "speculative level." *Twombly*, 550 U.S. at 555. The plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. To establish plausibility, a plaintiff "must give enough details about the subject-matter of the case to present a story that holds together." *Swanson*, 614 F.3d at 404. That the allegations underlying the claim "could be true is no longer enough to save it." *Estate of Miller ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 988 (7th Cir. 2012).

These requirements apply equally to a mental state when that is an element of a plaintiff's claim. *Iqbal*, 556 U.S. at 686-87. The plaintiff must allege facts sufficient to raise a plausible inference of a required mental state. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009); *Radiation Stabilization Solutions LLC v. Accuray Inc.*, 11-CV-07700, 2012 WL 3621256, at *4 (N.D. Ill. Aug. 21, 2012). A mental state cannot be pleaded merely as a conclusion. *Id.*

While Rule 8's standard governs most pleadings, allegations of fraud must also satisfy Rule 9(b) F.R.C.P. [Rule 7009 Fed. R. Bankr. P .]. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F .3d 502, 507 (7th Cir. 2007). Under Rule 9(b), "the circumstances constituting fraud ... shall be stated with particularity." *Id.* "This means the who, what, when, where, and how ..." *DiLeo v. Ernst & Young*, 901 F. 2d 624, 626 (7th Cir. 1990). This requirement ensures that defendants have fair notice of plaintiff's claims and grounds, providing defendants an opportunity to frame their answers and defenses. *Reshal Assocs., Inc. v. Long Grove Trading Co.*, 754 F .Supp. 1226, 1230 (N.D. Ill. 1990). This heightened pleading standard applies to all "averments of fraud," regardless of whether those averments pertain to a "cause of action" for fraud. *Borsellino*, 477 F .3d at 507. Allegations based on "information and belief" do not comply with the specificity requirement unless accompanied by a statement of facts providing the basis for such belief. *Interlease Aviation Investors II v. Vanguard Airlines, Inc.*, 254 F . Supp. 2d 1028, 1040 (N.D. Ill. 2003). The particularity requirement of Rule 9(b) applies equally to all claims based upon an underlying fraud, including fraud claims under § 523(a)(2)(A). *In re Munson*, 10 B 01559, 2010 WL 3768017 (Bankr. N.D. Ill. Sept. 17, 2010) (quoting *In re Lane*, 937 F.2d 694, 698 (1st Cir. 1991).

### NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A)

§ 523(a)(2)(A) excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" 11 U.S.C. § 523(a)(2)(A). That section describes three separate grounds for holding a debt to be nondischargeable: false pretenses, false representation, and actual fraud. *In re Jairath*, 259 B.R. 308, 314 (Bankr. N.D. Ill. 2001). Each ground for excepting a debt from discharge under § 523(a)(2)(A) must be separately considered. *In re Jacobs*, 448 B.R. 453, 470 (Bankr. N.D. Ill. 2011).

To except debts from discharge for false pretenses or false representation, a creditor must show: (1) the debtor made a false representation of fact, a representation, (2) which the debtor, either (a) knew was false or made with reckless disregard for the truth or (b) that debtor possessed an intent to deceive or defraud (3) upon which the creditor justifiably relied. *In re Davis*, 638 F.3d 549, 553 (7th Cir. 2011); *Ojeda v. Goldberg*, 599 F.3d 712, 716 (7th Cir. 2010). All three elements must be proven to prevail on § 523(a)(2)(A) claim. *In re Ardisson*, 272 B.R. 346, 357 (Bankr. N.D. Ill. 2001).

False pretenses under 11 U.S.C. § 523(a)(2)(A) "include implied misrepresentations of conduct intended to create or foster a false impression." *In re Morgan*, BR 09 B 42248, 2011 WL

5

3651327, at *4 (Bankr. N.D. Ill. Aug. 18, 2011) (internal citation omitted); In re Sarama, 192 B.R. 922, 927 (Bankr. N.D. Ill. 1996). A false pretense does not require overt misrepresentations. In re Sarama, 192 B.R. at 928. Rather, "omissions or a failure to disclose on the part of the debtor can constitute misrepresentations where the circumstances are such that the omissions or failure to disclose create a false impression which is known by the debtor." Id.

False pretenses include:

> [A] series of events, activities or communications which, when considered collectively, create a false and misleading set of circumstances, or false and misleading understanding of a transaction, in which a creditor is wrongfully induced by the debtor to transfer property or extend credit to the debtor....

In re Paneras, 195 B.R. 395, 406 (Bankr. N.D. Ill. 1996)

By contrast, a false representation is an express misrepresentation demonstrated either by a spoken or written statement or through conduct. In re Morgan, at *4. A debtor's silence concerning a material fact can also constitute a false representation. Id. (citing In re Westfall, 379 B.R 798, 803 (Bankr. C.D. Ill. 2007)). A false representation can be shown through conduct and does not require a spoken or written statement. In re Jairath, 259 B.R. at 314. Where the circumstances imply a specific set of facts, a debtor's failure to disclose necessary information to correct a false impression may also constitute a false representation. In re Malcolm, 145 B.R. 259, 263 (Bankr. N.D. Ill. 1992). A false representation need not be an overt oral or written lie; it may be established by showing conduct intended deliberately to create and foster a false impression. In re Jairath, 259 B.R. at 314.

### COMPLAINT MEETS THE RULE 9(b) STANDARD

The complaint does plead fraud with sufficient particularity under Rule 9(b). Casali argues that Parkway's complaint contains "no allegations about when, where, why and how those advances were allegedly taken." DiLeo v. Ernst & Young, 901 F.2d 624, 627 (7th Cir. 1990), but it does.

<u>Who</u>: "Casali made the false representation and omissions of fact . . . ." (Complaint ¶28)

<u>What</u>: "In conjunction with the loan made by Parkway, Casali made false representations and omissions of fact, including but not limited to, failing to disclose Parkway that he continued withdrawing funds from Household's line of credit before, during and after the issuance of the Payoff Letter and he did not close or intend to close Household's line of credit." (¶28). The complaint continues, "Casali's false representations and omission of fact that he would close the line of credit with Household, use the proceeds of Parkway's loan to pay off Household's line of

credit and grant Parkway a first mortgage on the Property in extending a loan to Casali." (¶30).

*When and where*: "In April 2003, Casali *approached Parkway* to obtain a personal line of credit from Parkway. At the time Casali approached Parkway to obtain a loan, Casali informed Parkway that he had an existing line of credit with Household . . ." and "[d]*uring its discussions* with Casali, Parkway informed Casali . . . ." about conditions on its loans. (¶¶ 6,7) (emphasis added).

*How*: Casali promised to use the money advanced by Parkway to pay Household in full to obtain a release of Household's first mortgage, thus giving Parkway the first mortgage. (¶¶7, 8) Instead of paying Household in full, Casali concealed from Parkway that he continued to draw on his line of credit with Household, resulting in Parkway not having a first mortgage on the Property. (¶¶ 20-21, 28).

Thus, the complaint pleads fraud with sufficient particularity to satisfy Rule 9(b).

However, although Rule 9(b) has been complied with sufficiently, the complaint will still be dismissed for failing to sufficiently allege facts from which the required intent may be inferred.

### COMPLAINT FAILS TO ADEQUATELY PLEAD FALSE PRETENSES OR FALSE REPRESENTATION

**1. Pleadings must support a showing of false representations of fact.**

False pretenses and false representation under § 523(a)(2)(A) requires that "the debtor made false representation of fact . . . ." *Ojeda*, 599 F.3d at 716. A false representation under § 523(a)(2)(A) must relate to a present or past fact, and a debtor's false contractual promise will not typically support a § 523(a)(2)(A) claim. *In re Hernandez*, 452 B.R. 709, 723 (Bankr. N.D. Ill. 2011). A promise constitutes a false representation under § 523(a)(2)(A) only if the debtor made the promise without an intention of ever keeping it. *Gene Clarke v. Richard M.. Swanson*, 13 B 14970 (Bankr. N.D. Ill. Jul. 7, 2014) (citing *Perlman v. Zell*, 185 F.3d 850, 852 (7th Cir. 1999); *Chriswell v. Alomari (In re Alomari)*, 486 B.R. 904, 911-12 (Bankr. N.D. Ill. 2013); *In re Hernandez*, 452 B.R. at 723.)

Although Casali is said to have broken his promises and agreement with Parkway, the factual allegations do not support an inference that Casali never intended to keep his promises when making those promises. (¶¶ 7-8, 18, 28).

**2. Pleadings do not show that Casali's representations were made with actual intent to deceive and defraud**

False pretenses, false representation, or actual fraud under § 523(a)(2)(A) requires proof that the debtor acted with intent to deceive. *Pearson v. Howard*, 339 B.R. 913, 919 (Bankr. N.D. Ill. 2006).

Intent to deceive requires the debtor's subjective intent to deceive when the debtor made the representations. In re Monroe, 304 B.R. at 356. Courts can infer actual intent from surrounding circumstances, since proof may be unavailable. In re Aguilar, 10-38275, 2014 WL 2566927 (Bankr. N.D. Ill. June 9, 2014) (quoting In re Kucera, 373 B.R. at 884 (Bankr. C.D. Ill. 2007)). Courts may consider relevant circumstances that took place after the debtor incurred the debt if that conduct indicates the debtor's state of mind when the debtor made asserted misrepresentations. In re Gelhaar, BR 09 B 07578, 2010 WL 4780314, at *7 (Bankr. N.D. Ill. Nov. 17, 2010) (Squires, J.).

As discussed before, while Parkway shows Casali did not fully keep his promises, Parkway does not yet show by plausible factual assertions that Casali made representations with actual intent to deceive and defraud when making those representations.

Thus, viewing the pleaded circumstances as a whole, there is no showing as yet of facts from which actual intent to defraud Parkway may be inferred. Therefore, Parkway's complaint does not adequately plead actual intent to deceive, and must be dismissed. Since Casali also raises other grounds for dismissal, they are addressed below.

### 3. Was Parkway's reliance justifiable?

Justifiable reliance by the creditor must be shown for false representations and false pretenses under § 523(a)(2)(A). This requires the creditor to not "blindly rely upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." Field v. Mans, 516 U.S. 59, 71 (1995). The creditor's duty to investigate arises when the falsity of the representation would have been readily apparent. Ojeda, 599 F.3d at 717 (citing Field, 516 U.S. at 70–71). However, it has sometimes been held that a creditor may be "justified in relying on a representation of fact 'although he might have ascertained the falsity of the representation had he made an investigation.'" Mercantile Bank v. Canovas, 237 B.R. 423, 429 (Bankr.N.D.Ill.1998) (quoting Field, 516 U.S. at 70).

Here, Parkway alleges that it "reasonably relied [on] Casali's ... representations ... that he would close the line of credit at Household, [use] the proceeds of Parkway's loan to pay off Household's line of credit and grant Parkway a first mortgage on the Property in extending a loan to Casali." (¶ 30). Further supporting reliance, Parkway stated that it "would not have extended a loan to Casali ..." knowing Casali would not fulfill the agreed conditions. (¶ 31). Nothing in the complaint supports an inference that the falsity of Casali's representations were readily apparent. However, the complaint does not explain why Parkway did not protect itself by following sound lending procedure and close in escrow with the new loan paid only if release of the old mortgage

was arranged. If a new complaint can be pleaded, Parkway will have the burden of showing at trial that it "justifiably" relied on any misrepresentation.

### DISMISSAL NOW WILL BE WITHOUT PREJUDICE

Paragraph 13 of Household's answer to a verified mortgage foreclosure complaint attached to the motion to dismiss stated that Casali continued to draw from his line of credit with Household on May 29, 2003 for $30,000 and on July 29, 2003 for $20,000. Paragraph 14 stated that after Casali's balance with Household reached $0.00 in 2005, he expressly instructed Household not to close his account after Household asked whether to close the account and release the lien. Paragraph 15 stated that Casali's account balance as of June 2013 was $265,000. Those facts, if they were alleged by Plaintiff might show that Casali's promises constitutes a false representation under § 523(a)(2)(A). If Casali continued to draw relatively large amounts of money from his line of credit with Household after making his promises to Parkway, that conduct may well show Casali's plan from the beginning was to dupe Parkway into lending to him while still drawing on the Household credit line.

It would be improper to consider now an exhibit attached to Casali's motion to dismiss because it is not part of the complaint or an exhibit to the complaint. *Beam v. IPCP Corp.* 838 F.2d 242 (7th Cir. 1988). "If matters outside the pleading are presented to and not excluded by the court in connection with a motion to dismiss, the [trial] court must treat the motion as one for summary judgment..." *Trask v. Foster*, 72 F.3d 132 (7th Cir. 1995) (internal quotation omitted). If the motion to dismiss were converted into one for summary judgment, "All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Rule 12(d), F.R.C.P. [Rule 7012 F.R. Bankr. P.]. At this stage in the litigation, the better course is to simply confine consideration of the pending motion to the complaint and attachments and dismiss with leave to allow plaintiff to amend and attempt to show any more pertinent facts that may be available.

### JUDICIAL ESTOPPEL DOES NOT APPLY

Judicial estoppel does not apply to prevent Casali from filing this complaint because it is not inconsistent with his earlier position in state court litigation. Judicial estoppel is a preclusion principle applicable to bankruptcy. The Supreme Court has described judicial estoppel as "[w]here a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken

by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)).

As an equitable doctrine, judicial estoppel provides "that a party who prevails on ground in a lawsuit cannot turn around and in another lawsuit repudiate the ground." *McNamara v. City of Chicago*, 138 F.3d 1219, 1225 (7th Cir. 1998), *cert. denied*, 525 U.S. 981, 119 (1998); *see also Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1427 (7th Cir. 1993) ("A litigant is forbidden to obtain a victory on one ground and then repudiate that ground in a different case in order to win a second victory."). Courts recognize that judicial estoppel serves "to protect the courts from being manipulated by chameleonic litigants who seek to prevail, twice, on opposite theories." *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir. 1992); *see also Ladd v. ITT Corp.*, 148 F.3d 753, 756 (7th Cir. 1998) ("[T]he purpose of the doctrine . . . is to reduce fraud in the legal process by forcing a modicum of consistency on a repeating litigant.")

Judicial estoppel is "not reducible to any general formulation of principle." *In re Knight–Celotex, LLC*, 695 F.3d 714, 721–22 (7th Cir. 2012). However three factors have been seen as relevant.

> Those factors are first, that "a party's later position must be clearly inconsistent with its earlier position;" second, that "the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;" and third, that "the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped."

Id.

"[T]hese factors are not rigid requirements but 'general guideposts that must be considered in the context of all the relevant equities in any given case.'" *Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 795 (7th Cir. 2013).

Casali contends that Parkway is "judicially estopped from taking conflicting legal positions in state and federal court." (Motion to Dismiss p. 7). The pending motion to dismiss argues that Parkway's state court complaint pleads only "for breach of contract, foreclosure and made no allegations whatsoever regarding fraud." (Id.)

Casali's argument bears on whether "a party's later position must be clearly inconsistent with its earlier position." *Maine*, 532 U.S. at 750-51. Although Parkway's complaint in state court alleges a breach of contract and not fraud, and Parkway's complaint in federal court alleges fraud and not a breach of contract, these two causes of actions are not conflicting or inconsistent.

Moreover, the Cook County Circuit Court has not issued a judgment on the breach of contract issue, so Parkway has not "succeeded in persuading a court to accept that party's earlier position." *Maine*, 532 U.S. at 750-51. Indeed, the motion does not show in any way that Parkway "would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.*

Therefore, judicial estoppel does not apply.

### THE EXTENT OF POSSIBLE NONDISCHARGEABILITY

The complaint requests the court to declare the entire debt Casali owes Parkway nondischargeable under § 523(a)(2)(A). (Complaint. ¶32). § 523(a)(2)(A) provides that a debt is not dischargeable "to the extent that" it is obtained by false pretenses, a false representation, or fraud. Principles of contract law damages may limit Parkway's recovery to the amount necessary to restore Parkway to its expectations, perhaps the difference between the amount on the payoff letter and the amount of the Household loan still outstanding after Parkway paid Household, or perhaps the amount now necessary to pay off Household and obtain release of its mortgage so that Parkway may obtain a first mortgage position.

However, it appears that § 523(a)(2)(A) has been construed to have a much broader reach. "[T]he phrase 'to the extent obtained by' in § 523(a)(2)(A) . . . does not impose any limitation on the extent to which 'any debt' arising from fraud is excepted from discharge." *Cohen v. de la Cruz*, 523 U.S. 213, 218 (1998) (involving a violation of New Jersey statute that allowed an award of attorney's fees). However, § 523(a)(2)(A) "does not except from discharge every debt somehow connected with fraud." *In re Jahelka* 442 B.R. at 669 (citing *In re Reyes*, 09 B 35198, 2010 WL 2757180, at *3 (Bankr. N.D. Ill. July 13, 2010)).

"The Supreme Court has held that Section 523(a)(2) is not limited to the actual amount transferred to the debtor in reliance on the fraud or misrepresentation" *In re Jackowiak*, 09-B-70190, 2009 WL 3930217 (Bankr. N.D. Ill. Nov. 18, 2009). The Supreme Court in *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998) held "'any debt . . . for money, property, services, or . . . credit, to the extent obtained by' fraud encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor."

## CONCLUSION

For the foregoing reasons, the court will by separate order grant Casali's motion to dismiss with leave to amend.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated, August 29, 2014