IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHER DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| RENATO CASALI, | ) | Case No. 13 B 30521 |
| | ) | |
| Debtor. | ) | Judge Jack B. Schmetterer |
| | ) | |
| _____ | ) | |
| PARKWAY BANK AND TRUST | ) | |
| COMPANY, | ) | |
| | ) | Adversary No. 14-00124 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RENATO CASALI, | ) | |
| | ) | |
| Defendant. | ) | |

**FIRST AMENDED COMPLAINT TO DETERMINE NON-DISCHARGEABILITY
OF DEBT UNDER 11 U.S.C. §523(a)(2)(A)**

Plaintiff **PARKWAY BANK AND TRUST COMPANY ("Parkway")**, by and through

their attorneys, Latimer LeVay Fyock LLC, files its First Amended Complaint to Determine

Non-Dischargeability of Debt owed to Parkway by Defendant Renato Casali ("Casali") pursuant

to 11 U.S.C. §523(a)(2)(A) and Federal Rule of Bankruptcy Procedure 4007, alleges and states

as follows:

**JURISDICTION AND VENUE**

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334,

§157(b)(1), and 11 U.S.C. §523.

2.     This is a core proceeding pursuant to 28 U.S.C. §157(d)(2)(i).

3.     Venue is proper in this Court pursuant to 28 U.S.C. §1409.

## PARTIES

4.    Parkway is a secured creditor of Casali as noted in his schedules accompanying Casali's voluntary petition for Chapter 7 bankruptcy protection and is owed amounts under a personal loan made by Parkway to Casali, secured by Casali's personal residence located at 4547 Potawatomie, Chicago, Illinois 60656 (the "Property") and which is the subject of a state court foreclosure action.

5.    Defendant Renato Casali ("Casali") is a resident of Chicago, Illinois. Casali filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code on July 31, 2013.

## CASALI'S FRAUD

6.    In April 2003, Casali approached Parkway to obtain a personal line of credit from Parkway.  At the time Casali approached Parkway to obtain a loan, Casali informed Parkway that he had an existing line of credit with Household Finance, now known as HSBC ("Household"), in the amount of approximately $80,000.00, which was secured by a first mortgage on the Property.

7.    During its discussions with Casali, Parkway informed Casali that any loan provided by Parkway would be conditioned upon Casali closing his line of credit with Household, the proceeds of Parkway's loan paying off Household's line of credit, obtaining a release of Household's mortgage on the Property, and Parkway obtaining a first mortgage on the Property.

8.    Based on Casali's agreement to use the proceeds from Parkway's loan to payoff Household, close his line of credit with Household, and grant Parkway a first mortgage on the Property, Parkway entered into a Credit Agreement and Disclosure dated May 5, 2003 with

Casali, which was subsequently amended, renewed and replaced by the August 21, 2008 Credit Agreement and Disclosure (the "Note"). True and correct copies of the May 5, 2003 and August 21, 2008 Notes are attached hereto as **Group Exhibit A**.

9.      As security for the Note, Casali and his wife, Anna F. Casali, executed a mortgage ("Mortgage") in favor of Parkway, dated May 5, 2003 and recorded on May 6, 2003 with the Cook County Recorder of Deeds as Document No. 0312649323 and an Assignment of Rents dated May 5, 2003 for the Property ("Assignment of Rents").  True and correct copies of the Mortgage and Assignment of Rents are attached hereto as **Group Exhibit B**.

10.      In addition to executing the Note, Mortgage and Assignment of Rents, on May 5, 2003 Casali executed a Disbursement Request and Authorization Form whereby Casali acknowledged and agreed that the purpose of the Parkway loan was to "Payoff 1st mortgage with Household Finance Company of $80,000.00 and additional funds will be used for investment purposes."  A true and correct copy of May 5, 2003 Disbursement Request and Authorization Form is attached hereto as **Exhibit C**.

11.      At the time Parkway entered into the loan with Casali, upon information and belief, Casali requested a payoff letter from Household.

12.      On or about May 7, 2003, Household provided a payoff letter ("Payoff Letter") to Casali, who in turn forwarded it to Parkway wherein Household identified that the amount owed to pay the account in full was $154,731.46 ("Payoff Amount").  A true and correct copy of the payoff letter dated May 7, 2003 is attached hereto as **Exhibit D.**   The Payoff Letter stated that the total amount due of $154,731.46 was good until June 6, 2003.  See **Exhibit D**.

13.      However, the Payoff Letter stated that "the payoff quote does not waive our rights to receive any funds, which are due and owing on this account as a result of any *subsequent*

*adjustments*, which may include but are not limited to *recent advances*, returned items, and additional fees." See **Exhibit D**, emphasis added.

14.     Further, the Payoff Letter includes the following language:

> If the credit line is to be cancelled, please sign below and include this letter with your payment. We will forward the necessary documents to the Trustee/County Recorder's office to release our lien within thirty days after the account is paid in full.

> Please cancel my credit line.  Unless signed authorization to cancel the credit line is received, the line will remain open and we will not release the lien.

See **Exhibit D**.

15.     Casali and his wife both signed the Payoff Letter authorizing Household to cancel the credit line. See **Exhibit D**.

16.     On May 10, 2003, Parkway issued a check made payable to Household in the amount of $154,731.46 (the "Payoff Check") and forwarded to Household the check along with the signed Payoff Letter and a letter to Household requesting that Household issue a release of its mortgage on the Property to Parkway.  A true and correct copy of the Payoff Check issued by Parkway along with the letter issued to Household is attached hereto as **Exhibit E**.

17.     Unknown to Parkway though, on May 8, 2003, three days after Casali entered into the loan with Parkway *and one day after* Household issued its Payoff Letter, Casali withdrew $2,858.00 from Household's line of credit.

18.     Household received and cashed the Payoff Check on May 12, 2003.

19.     At the time Household received the Payoff Check from Parkway, the amount owed on Casali's line of credit with Household was $156,631.09.    In other words, if Casali had not withdrawn the additional $2,858.00 a day after the Payoff Letter was issued, despite his

representation that Household's line would be paid off and closed, the check issued by Parkway would have been sufficient to retire the Household debt.

20.     Because the Household line was not paid in full, the account remained open, again, without Parkway's knowledge.  Casali then used this open line to his advantage.

21.     For example, on May 29, 2003, after Parkway issued the Payoff Check and the Payoff Check was cashed by Household, Casali withdrew an additional $30,000.00 from Household's line of credit.

22.     In addition to the withdrawals made on May 8, 2003 and May 29, 2003, Casali continued making withdrawals from Household's line of credit on the following dates and for the following amounts:

| **Date** | **Amount** | **Date** | **Amount** |
|---|---|---|---|
| 07/21/03 | $2,156.93 | 02/13/06 | $8,000.00 |
| 07/29/03 | $15,000.00 | 02/16/06 | $10,000.00 |
| 08/11/03 | $20,000.00 | 03/08/06 | $10,000.00 |
| 09/09/03 | $17,000.00 | 04/07/06 | $20,000.00 |
| 10/07/03 | $22,000.00 | 07/03/06 | $20,000.00 |
| 10/21/03 | $30,000.00 | 10/10/06 | $10,000.00 |
| 11/28/03 | $7,000.00 | 12/28/06 | $5,000.00 |
| 03/26/04 | $35,000.00 | 07/12/07 | $1,500.00 |
| 07/26/04 | $23,500.00 | 08/22/07 | $5,000.00 |
| 08/11/04 | $650.00 | 09/12/07 | $5,000.00 |
| 09/11/04 | $25,000.00 | 10/10/07 | $15,000.00 |
| 10/27/04 | $3,400.00 | 04/15/08 | $4,000.00 |
| 11/23/04 | $8,000.00 | 04/15/08 | $11,000.00 |
| 12/03/04 | $125,000.00 | 05/06/08 | $5,000.00 |
| 12/06/04 | $5,000.00 | 08/25/08 | $5,400.00 |
| 12/17/04 | $25,000.00 | 08/26/08 | $3,300.00 |
| 02/10/05 | $15,000.00 | 09/09/08 | $300.00 |
| 02/24/05 | $10,000.00 | 09/10/08 | $20,000.00 |
| 03/04/05 | $8,395.00 | 09/11/08 | $9,000.00 |
| 03/08/05 | $10,000.00 | 10/06/08 | $1,500.00 |
| 03/21/05 | $6,500.00 | 10/07/08 | $100,000.00 |
| 03/24/05 | $10,000.00 | 11/17/09 | $3,000.00 |
| 02/17/05 | $7,000.00 | 12/24/09 | $7,000.00 |
| 06/17/05 | 5,000.00 | 02/09/10 | $3,000.00 |

| 06/23/05 | 20,000.00 | 02/12/10 | $2,000.00 |
| 06/23/05 | $27,000.00 | 03/10/10 | $7,500.00 |
| 10/21/05 | $30,000.00 | 03/19/10 | $10,000.00 |
| 01/04/06 | $11,006.63 | 03/30/10 | $5,000.00 |
| 01/19/06 | $20,000.00 | | |

23.    At the time Parkway issued the Payoff Check, Casali failed to disclose to Parkway that he had already withdrawn additional funds, rendering the payoff check inadequate, and also failed to disclose that would continue drawing available funds from Household's line of credit during and after the issuance of the Payoff Letter.

24.    At at the time Casali signed the Payoff Letter authorizing Household to close the line of credit, Casali knew or should have known that the payoff amount stated in the Payoff Letter would not be sufficient to pay off Household's line of credit.

25.    At the time Casali signed the Payoff Letter authorizing Household to close the line of credit, Casali knew or should have known that the Payoff Check issued by Parkway would be insufficient to payoff Household's line of credit in full.

26.    On February 9, 2005, Household issued a letter to Casali informing him that Casali's line of credit with Household reached $0.00 and inquired as to whether or not Casali would like to keep Household's line of credit open and active, or close the account.  A true and correct copy of February 9, 2005 letter to Casali is attached hereto as **Exhibit F**.

27.    The February 9, 2005 letter further states as follows:

> If you wish to keep your credit line open and active, you must contact us within the next 15 business days to confirm this decision.  You may contact us using the form below mailed in the postage prepaid envelope provided or fax a copy of the form to us at 1-800-421-3227.  If you misplace the postage paid envelope, the form should be mailed to PO Box 1547, Chesapeake, VA 23327.

> If we do not hear from you within the next 15 business days confirming your decision to keep this credit limit open, we will assume that it is your intent to pay-off the revolving line of credit.  Therefore, we will close the account and release the lien.

See **Exhibit F**.

28.     Casali and his wife both executed the form attached to the February 9, 2005 letter instructing Household to keep the line of credit open, active, and not to close the account nor release the lien until instructed.  See **Exhibit F**.

29.     Between 2010 and 2012, in reliance upon the Parkway's belief that it had a first mortgage on the Property, Parkway advanced monies for payment of past due and sold real estate taxes on the Property in the amount of $14,710.16.

30.     On January 29, 2013, an event of default was declared as a result of Casali's failure to pay when due real estate taxes owing on the Property.

31.     Based on Casali's default and in preparation for filing its complaint for foreclosure of mortgage, Parkway obtained minutes of foreclosure on the Property.

32.     On February 11, 2013, upon receipt of the minutes of foreclosure, Parkway, through its attorneys, discovered that Household never released its mortgage on the Property.

33.     As of June 2013, the total outstanding balance owed by Casali on Household's line of credit, including principal and fees, totaled over $265,000.00.

34.     Section 523(a)(2)(A) of the Bankruptcy Code provides that a debtor is not discharged from any debt for money, property, services, or an extension of credit renewal or refinancing of credit obtained by false pretenses, a false representation, or actual fraud other than a statement respecting the debtor's or insider's financial condition.  11 U.S.C. §523(a)(2)(A) (West 2013).

35.     In conjunction with the loan made by Parkway, Casali made false representations and omissions of fact, including but not limited to, failing to disclose Parkway that he would

continue withdrawing funds from Household's line of credit after the issuance of the Payoff Letter and he did not close or intend to close Household's line of credit.

36.    At the time Casali made the false representation and omissions of fact, Casali knew or should have known that the Payoff Check would not pay off Household's line of credit in full, Household would not release its mortgage due to the line of credit not having been paid off in full, thereby resulting in Parkway not having a first mortgage on the Property.

37.    Casali intended that Parkway rely on his false representations and omissions of fact for the purpose of inducing Parkway to extend a loan to him.

38.    Parkway reasonably relied upon Casali's false representations and omission of fact that he would close the line of credit with Household, use the proceeds of Parkway's loan to pay off Household's line of credit and grant Parkway a first mortgage on the Property in extending a loan to Casali.

39.    Parkway would not have extended a loan to Casali had it known that (a) the Payoff Letter would not payoff Household's line of credit in full, (b) Casali continued drawing funds from Household's line of credit during and after the issuance of the Payoff Letter, (c) Household's line of credit would remain open, (d) Household's mortgage would remain on the Property, and (e) Parkway's Mortgage would not have a first mortgage on the Property.

40.    As set forth above, based on the false representations and omissions of material fact made by Casali in obtaining the loan from Parkway, the debt owed by Casali to Parkway is non-dischargeable under 11 U.S.C. §523(a)(2)(A).

WHEREFORE, **PARKWAY BANK AND TRUST COMPANY,** respectfully requests that this Honorable Court determine that the debt owed by Renato Casali to Parkway Bank and Trust Company is non-dischargeable pursuant to 11 U.S.C. §523(a)(2)(A) and award Parkway

Bank and Trust Company its attorneys' fees and costs incurred in this matter and grant such

other and further relief as this Court deems just and fair.

**PARKWAY BANK AND TRUST COMPANY**

By: _____ /s/ Sheryl A. Fyock _____
         One of Its Attorneys

**Sheryl A. Fyock** (ARDC No. 06204378)
**Holly Carto** (ARDC No. 6280044)
**Tejal S. Desai** (ARDC No. 6280834)
**LATIMER LeVAY FYOCK LLC**
55 West Monroe Street
Suite 1100
Chicago, Illinois  60603
(312) 422-8000
(312) 422-8001 (Fax)

## VERIFICATION BY CERTIFICATION

I, Laura D'Amato, being of full age and duly sworn, upon oath, deposes, and states:

1.  I am the Assistant Vice President for Parkway Bank and Trust Company and have personal knowledge of the facts alleged herein and am duly authorized to so represent and am prepared to testify if called as a witness.

2.  I have read the following First Amended Verified Complaint for Non-Dischargeability and the allegations contained therein, except as to those allegations to be on information and belief, which I believe to be true, all of the allegations in this First Amended Verified Complaint for Non-Dischargeability are true based on my personal knowledge, Parkway Bank and Trust Company's records, and information available through Parkway Bank's employees.

By:_____
     Laura D'Amato, Assistant Vice President
     of Parkway Bank and Trust Company