United States Bankruptcy Court
Northern District of Illinois
Eastern Division

| | |
|---|---|
| In re:<br><br>Renato Casali,<br><br>Debtor | |
| | Bankruptcy No. 13-bk-30521 |
| Parkway Bank & Trust,<br><br>Plaintiff<br><br>v.<br><br>Renato Casali<br><br>Defendant | Chapter 7<br><br>Adversary No. 14-ap-124 |

**MEMORANDUM OPINION ON MOTION OF RENATO CASALI TO DISMSS
PARKWAY BANK & TRUST'S AMENDED ADVERSARY COMPLAINT**

This Adversary Proceeding relates to the bankruptcy petition filed by debtor-defendant Renato Casali ("Casali") under Chapter 7 of the Bankruptcy Code. Creditor-plaintiff Parkway Bank & Trust ("Parkway") filed its Complaint (Dkt. 1) on February 25, 2014 seeking a judgment that a debt due Parkway from Casali be held non-dischargeable under 11 U.S.C. § 523(a)(2)(A). Casali previously moved to dismiss that Complaint under Rule 12(b)(6) F.R. Civ. P. [as adopted by Rule 7012 F.R. Bankr. P.] That motion was granted without prejudice. (Dkt. 26.) Parkway then filed an Amended Complaint (Dkt. 38.) Casali moved again to dismiss under Rule 12(b)(6), this time seeking dismissal with prejudice. As explained below, Parkway has addressed the shortcomings of its original Complaint referred to in the previous opinion. *In re Casali,* 517 B.R. 835 (Bankr. N.D. Ill. 2014). Accordingly, the second motion to dismiss will be denied.

## FACTS AS ALLEGED IN THE AMENDED COMPLAINT

On a motion to dismiss under Rule 12(b)(6), all well-pleaded allegations in the complaint are taken as true and all reasonable inferences are drawn in favor of the non-moving party. *Geinosky v. City of Chicago*, 675 F.3d 743, 746 (7th Cir. 2012). Documents attached to a complaint are considered part of the complaint. F.R.C.P. 10(c) [Rule 7010 Fed. R. Bankr. P.]; *Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (citations omitted). Parkway's amended complaint and exhibits allege the following facts:

In April 2003, Casali requested a personal line of credit from Parkway. (¶ 6.) Parkway agreed to provide a loan secured by a mortgage on Casali's residence, (¶ 9) and to use the loan proceeds to pay off his first mortgage on the same property in favor Household Finance ("Household") (¶ 7). As part of the transaction, Casali signed a Disbursement Request and Authorization Form on May 5, 2003 wherein he agreed that the purpose of the loan was to "Payoff 1st mortgage with Household Finance Company of $80,000.00 and additional funds will be used for investment purposes." (¶ 10.) Casali also provided a loan payoff letter from Household dated May 7, 2003 requiring payment of $154,731.46 by June 6, 2003. (¶ 12.) The payoff letter also stated that the specified payoff amount was subject to any subsequent adjustments such as recent advances. (¶ 13.) The payoff letter also required signatures by Casali and his wife for the line of credit to be closed and the existing lien on their residence to be released. (¶ 14.) Casali and his wife both signed the payoff letter provided to Parkway.

On May 10, 2003, Parkway made and opened a mortgage loan to Casali and issued a check made payable to Household for the amount shown due on the payoff letter. It sent that check to Household along with the fully signed payoff letter. On May 8, 2003 – before the check was sent but after the payoff letter was requested – Casali drew $2,858 more on the Household line of credit. (¶ 16.) On May 12, 2003, Household accepted and deposited the check from Parkway. (¶ 18.) However, that check was then

2

insufficient to pay off the Household line of credit because of the additional loan draw on May 8, so Household retained its first lien. Subsequently, Casali continued to draw on the unreleased Household line of credit. For example, on May 29, 2003, Casali withdrew another $30,000. (¶ 21.)

On February 9, 2005, Casali paid down the Household line of credit to a balance of $0, and Household sent Casali a letter inquiring whether he wanted to keep the line of credit open. (¶ 26.) Casali instructed Household to keep the line of credit open. (¶ 28.) Between May, 2003 and March, 2010, Casali drew on the Household line of credit fifty-seven times, sometimes for tens of thousands of dollars at a time. (¶ 22.) Therefore, Household has retained its first mortgage on the debtor's property and Parkway holds only a junior lien.

## DISCUSSION

### JURISDICTION

Jurisdiction lies to entertain this matter under 28 U.S.C. § 1334. The Amended Complaint asserts an objection to dischargeability, and is therefore a core proceeding under 28 U.S.C. § 157(b)(2)(I). It is referred here by Internal Procedure 15(a) of the District Court for the Northern District of Illinois. An adversary proceeding seeking to determine dischargeability of a debt "stems from the bankruptcy itself." *Stern v. Marshall*, 131 S. Ct. 2594, 2618 (2011). A bankruptcy judge has constitutional authority to enter final judgment as to dischargeability. This proceeding only concerns the dischargeability of any a possible debt. Plaintiff has not requested final adjudication as to the amount due on any debt. Venue is proper under 28 U.S.C. § 1409(a).

### SUFFICIENCY OF THE PLEADINGS AND NONDISCHARGEABILITY

The familiar standards for dismissal under Rule 12(b)(6), F.R. Civ. P. [as made applicable by Rule 7012 F.R. Bankr. P.] and nondischargeability under 11 U.S.C. § 523(a)(2)(A) were discussed in detail in the prior opinion, and will not be repeated

3

here. *Casali*, 517 B.R. at 840-842. As earlier discussed, the original Complaint was dismissed because it failed adequately to plead sufficient facts to show plausibly "actual intent to deceive." *Id.* at 844. The issue before the court in the pending motion to dismiss is whether additional facts alleged by Parkway make its Amended Complaint adequate.

### INTENT TO DECEIVE

Generally, a promise "constitutes a false representation under § 523(a)(2)(A) only if the debtor made the promise without an intention of ever keeping it." *Gene Clarke v. Richard M. Swanson*, 13 B 14970 (Bankr. N.D. Ill. Jul. 7, 2014). Even though intent to deceive requires the debtor's subjective intent to deceive when the debtor made the representations, (*In re Monroe*, 304 B.R. 349, 356 (Bankr. N.D. Ill. 2004), courts can infer actual intent from surrounding circumstances, since direct proof may be unavailable (*In re Aguilar*, 511 B.R. 507, 513 (Bankr. N.D. Ill. 2014)).

Here, Casali promised to pay off and obtain release of the Household line of credit and mortgage with proceeds of the Parkway loan, but didn't do so. On May 8, 2003, one day after he provided a payoff letter to Parkway, he drew more funds on the Household line of credit, so the check from Parkway to Household failed to pay off the Household line of credit. He later made further draws on the line of credit. One plausible inference is that Casali made his promise to Parkway without any intention to keep it. From this, it is also possible to infer a subjective intent to deceive. The timing of the transactions in from May 7-10, 2003 is enough to arouse plausible suspicion. The $30,000 draw on the Household line of credit on May 29 – less than a month later – only heightens the plausibility of such inference, as do further draws over time. The request by debtor to keep the credit line open in 2005 coupled with the pattern of withdrawals from 2003 to 2005 link the events. Even with all this, it may still be possible for defendant to argue that only an innocent breach of contract occurred, but deciding which conclusion to draw requires evidence at trial.

4

### RELIANCE

Casali once again argues that Parkway's reliance on debtor's promise was not justifiable. That argument was dealt with in the prior opinion and found insufficient to justify dismissal without trial. *Casali*, 517 B.R. at 835. Casali renews this argument based on some language reserving Household's rights in the payoff letter, which had not been attached to the original Complaint. That payoff letter provided in pertinent part, "The payoff quote does not waive our [Household's] rights to receive any funds, which are due and owing on this account as a result of any subsequent adjustments, which may include but are not limited to recent advances, returned items and additional fees. Additionally, we will not release any security interest until the account is paid in full." (Amended Complaint Exh. D.)

The prior opinion already stated that relying on a payoff letter without making sure that the old mortgage was released was less than careful banking procedure. *Casali* at 844. The language in the payoff letter illustrates why that might be so. Whether Parkway's reliance on Casali's promise was justified is still an issue that should be resolved at trial.

### ACTUAL FRAUD

The defendant also argues that the Amended Complaint fails to allege actual fraud because it does not allege an actual intent to deceive. Actual fraud under § 523(a)(2)(A) requires the plaintiff to prove that (1) a fraud occurred, (2) the debtor intended to defraud, and (3) the fraud created the debt. *In re Jahelka*, 442 B.R. 663, 669 (Bankr. N.D. Ill. 2010). However, a Seventh Circuit opinion has explained that, aside from misrepresentations and misleading omissions fraud is a broad concept:

> Fraud is a generic term, which embraces all the multifarious means which human ingenuity can devise and which are resorted to by one individual to gain an advantage over another by false suggestions or by the suppression of truth. No definite and invariable rule can be laid down as a general proposition defining

5

fraud, and it includes all surprise, trick, cunning, and any unfair
way by which another is cheated.

*McClellan v. Cantrell,* 217 F.3d 890, 893 (7th Cir. 2000). Fraud therefore includes
"any deceit, artifice, trick or design involving direct and active operation of the mind,
used to circumvent and cheat another." *Id.*

Casali's behavior as alleged sufficiently shows that Parkway pleads that a fraud
may have occurred. *In re Jahelka,* 442 B.R. at 669. Casali "gained an advantage."
*McClellan,* 217 F.3d at 893. He promised to use money advanced by Parkway to pay
Household in full to obtain a release of Household's first mortgage, so as to allow his
new lender Parkway to receive a first mortgage for a line of credit. *McClellan,* 217 F.3d
at 893. As discussed above, the requisite intent may plausibly be inferred from
circumstances alleged in the Amended Complaint.

## CONCLUSION

For the foregoing reasons, the Defendant's motion to dismiss the Amended
Complaint will be denied by separate order. That order will also set a status date for the
entry of a pretrial order scheduling trial.

ENTER:

Jack B. Schmetterer
United States Bankruptcy Judge

Dated this 12th day of March, 2015

## Certificate of Service

I, James Liu, certify that on March 12, 2015, I caused to be served copies of the foregoing document to the following on the attached service list by electronic service through the Court's CM/ECF system or regular U.S. mail:

Law Clerk

## Electronic Service through CM/ECF System

**Tejal S. Desai**  tdesai@llflegal.com
**Sheryl A Fyock**  sfyock@llflegal.com
Latimer LeVay Fyock LLC
55 W. Monroe Street
Suite 110
Chicago, IL 60606

**Paul M Bach**  ecfbach@gmail.com
**Penelope N Bach**  pnbach@sulaimanlaw.com
Sulaiman Law Group, Ltd.
900 Jorie Boulevard
Suite 150
Oak Brook, IL 60523